IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FILO SEDILLO in his capacity as trustee of the Filo and Fran Sedillo Revocable Trust, on behalf of the Filo and Fran Sedillo Revocable Trust, | § § § § § | |
| Plaintiff, | § § | Civil Action No. 3:20-CV-1628-D |
| VS. | § § | |
| TEAM TECHNOLOGIES, INC., et al., | § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

In this removed action by plaintiff Filo Sedillo ("Sedillo") against defendants Team Technologies, Inc. ("Team") and Robert Sachs ("Sachs"), defendants move to dismiss for lack of personal jurisdiction or, alternatively, to transfer this action to the District of New Mexico under 28 U.S.C. § 1404(a), and to dismiss Sedillo's fraud-based and negligent misrepresentation claims under Fed. R. Civ. P. 9(b) for failure to plead with the required specificity. For the reasons that follow, the court denies defendants' motion to dismiss for lack of personal jurisdiction and alternative motion to transfer venue, grants defendants' motion to dismiss Sedillo's fraud-based and negligent misrepresentation claims, and grants Sedillo leave to replead.

I

Sedillo sues Team and Sachs, alleging these claims: breach of contract; fraudulent misrepresentation; fraud by non-disclosure; statutory fraud, in violation of Tex. Bus. & Com. Code Ann § 27.01; fraudulent inducement; string along fraud; and negligent misrepresentation.[1]   Sedillo's lawsuit arises from a Restated Loan Agreement (the "Agreement") with Team and the negotiations and discussions that resulted in the loan.

Team is a New Mexico corporation with its principal place of business in Albuquerque, and Sachs, its president and CEO, is a New Mexico resident.  Sedillo is a resident of Dallas, Texas.

According to Sedillo, in 2018 he attended his high school reunion in New Mexico, during which Sachs told Sedillo that he had exclusive rights to a patented ozone technology that would be a "game changer" in the oil and gas industry.  After Sedillo returned to Dallas, he received numerous emails and phone calls from Sachs repeating statements about his patent rights and technology.  Sedillo agreed to travel with Sachs to Nebraska to see a demonstration of the technology.  On December 11, 2018 Sedillo loaned TEAM $200,000 from the Trust.

In January 2019 Sachs visited Dallas and stayed at Sedillo's home.  During this trip, Sachs allegedly made a number of false statements regarding the technology, such as that "he was awarded full rights to the patents based on his assistance in breaking ozone world

---

[1]Sedillo sues in his capacity as trustee of the Filo and Fran Sedillo Revocable Trust, on behalf of the Filo and Fran Sedillo Revocable Trust.

records" and that "his technology was nearly commercially ready and he only needed capital to start the scaling process." P. Resp. at 6. In February 2019 Sedillo agreed to loan Sachs $300,000 from the Trust and executed his part of the Agreement while in Dallas.

According to Sedillo, TEAM subsequently failed to make timely payments required by the Agreement, and he initiated this action.

II

The court first considers defendants' challenge to the court's exercise of personal jurisdiction over them.

The determination whether a federal district court has in personam jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over defendants would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.; Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed [it]self of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To

> comport with due process, the defendant's conduct in connection with the forum state must be such that [it] "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The defendants' contacts with the forum may support either specific or general jurisdiction over the defendants.  *Mink*, 190 F.3d at 336.  "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.  General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic."  *Id*. (citations omitted).[2]

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines: (1) the defendants' burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furthering fundamental social policies.  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

"The district court usually resolves the jurisdictional issue without conducting a hearing."  *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

---

[2]Sedillo does not argue that the court has general jurisdiction over either defendant.

- 4 -

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits.  Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted).

"This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).  Nor is the court limited to considering the facts pleaded in the complaint.  *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).  Rather, "the district court may receive any combination of the recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Tendeka, Inc. v. Glover*, 2014 WL 978308, at *3 (S.D. Tex. Mar. 12, 2014) (Rosenthal, J.) (internal quotation marks omitted).

### III

The court first addresses whether it can exercise specific personal jurisdiction over defendants.

### A

Specific personal jurisdiction "is appropriate when the nonresident defendant's

contacts with the forum state arise from, or are directly related to, the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."  *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 274 (5th Cir. 2006).  But when multiple claims arise from the same contacts, specific jurisdiction does not need to be established for each claim.  *Sutton v. Advanced Aquaculture Sys., Inc*., 621 F.Supp.2d 435, 442 (W.D. Tex. 2007); *see also Festor v. Wolf*, 2009 WL 10669519, at *5 (W.D. Tex. 2009) (citing *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc*., 754 F.2d 542, 548 (5th Cir. 1985), and noting that "when the facts relating to the contract and fraudulent inducement claims are intertwined, the tortious conduct may support personal jurisdiction for both the tort and contract claims").

Under the Due Process Clause of the Fourteenth Amendment, "the mere contracting with a resident of the forum state is not in itself sufficient to establish minimum contacts such that the forum state may exercise personal jurisdiction over the defendant." *Brammer Eng'g, Inc. v. E. Wright Mountain L.P.*, 307 Fed. Appx. 845, 847-48 (5th Cir. 2009) (per curiam) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)); *see also Burger King*, 471 U.S. at 479 ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.").  But "[a] single act by a defendant can be

enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001).

"[A] single communication directed at the forum can establish personal jurisdiction where the content of that communication gives rise to an intentional tort for which jurisdiction is sought." *Fairchild v. Barot*, 946 F.Supp.2d 573, 578 (N.D. Tex. 2013) (Lynn, J.) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). A defendant's transmission of a communication into the forum state is sufficient to be considered purposeful availment if the content of that communication gives rise to an intentional tort cause of action. *Wien Air*, 195 F.3d at 213.

B

The first amended complaint ("amended complaint") alleges that Sachs, on behalf of TEAM, communicated fraudulent information by email, phone, and in person to Sedillo in Texas for the purpose of inducing him to loan TEAM money.

Defendants argue that the court does not have personal jurisdiction over them because Sachs executed the contract on TEAM's behalf in New Mexico for a loan received in New Mexico; Sachs did not seek out Sedillo to loan TEAM funds; and the repayment of the loan was to be to a bank account outside of Texas. According to defendants, neither TEAM nor Sachs does business in Texas, and the Agreement was drafted by an attorney in New Mexico and is governed by New Mexico law. Defendants also maintain that communications with a Texas resident are not sufficient by themselves to support the exercise of personal jurisdiction. They posit that any actions that Sachs undertook on behalf of Sigma—a related

- 7 -

entity but not a party to this lawsuit—are irrelevant to this lawsuit and to the personal jurisdiction analysis.

Sedillo responds that this court can exercise personal jurisdiction over defendants as to both his contract and tort claims based on statements Sachs made, in his individual capacity and on behalf of TEAM, to Sedillo in Texas to induce him to loan TEAM money. He maintains that he negotiated the Agreement from Dallas, Texas, and that the Agreement identifies the lender's location as Dallas; that he initiated the transfer of funds described in the Agreement from Texas and received TEAM's executed counterpart of the Agreement in Dallas; and that defendants repeatedly made false statements regarding the status, capability, and efficiency of TEAM's ozone technology, and that these statements were communicated to Sedillo in Texas. Sedillo cites, *inter alia*, *Wien Air*, 195 F.3d 208, arguing that a single phone call to him in Texas that gives rise to his claims can support the exercise of personal jurisdiction over defendants. *See Wien Air*, 195 F.3d at 213 ("When the actual content of communications gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

Defendants reply that Sedillo does not identify when and where Sachs made any the alleged misrepresentations, and that Sachs's trip to Texas in January 2019 was on behalf of Sigma, not TEAM. They contend that Sedillo has not shown that they purposefully directed any activities giving rise to this lawsuit towards Texas.

- 8 -

C

The court concludes that Sedillo has made a prima facie showing that defendants purposefully directed their fraudulent activities toward the state of Texas by communicating allegedly fraudulent statements (either in person or from outside of Texas) to Sedillo in Texas.[3]  Sedillo alleges that he relied on these statements in deciding to loan money to TEAM.  These statements form the basis of Sedillo's tort and contract claims.  *See, e.g., D.J. Investments, Inc.*, 754 F.2d at 546 (holding that court could exercise personal jurisdiction over contract claim that was related directly to the tortious activities giving rise to personal jurisdiction); *see also Eagle Metal Prods., LLC v. Keymark Enters.*, *LLC*, 651 F.Supp.2d 577, 591 (N.D. Tex. 2009) (Lynn, J.) ("[Defendant's] participation in the alleged conspiracy is premised on his alleged agreement with Automatic and Black to commit torts over which the Court has personal jurisdiction, such as the interference with [plaintiff's] customer relationships, defamation, and fraud. The same contacts establish a prima facie case for jurisdiction with respect to the conspiracy theory of liability."); *Kapche v. Philip Seifert & Liberty Capitol, L.L.C.*, 2007 WL 2915003, at *3 (S.D. Tex. 2007) ("[T]he actions giving rise to the claims of breach of contract, fraud, and negligent misrepresentation are either the same or intertwined and also involve the same parties. As such, specific jurisdiction for each claim need not be addressed separately.").

---

[3]To the extent defendants challenge any statements in Sedillo's affidavit, any conflicts in the evidence must be resolved in Sedillo's favor for purposes of deciding whether he has established a prima facie case.  *See Latshaw*, 167 F.3d at 211.

D

Defendants also contend that Sachs is shielded from the exercise of specific jurisdiction for actions taken in his corporate capacity. They maintain that, to the extent Sachs had contacts that form the basis of this court's jurisdiction, the contacts were undertaken on behalf of TEAM.

"[T]he fiduciary shield doctrine generally prohibits a court from exercising personal jurisdiction over an individual for actions taken in a corporate capacity." *Fairchild v. Barot*, 946 F.Supp.2d 573, 581 (N.D. Tex. 2013) (Lynn, J.) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)). "However, corporate officers are not shielded from the exercise of specific jurisdiction for fraudulent or tortious acts for which they may be liable." *Fairchild*, 946 F.Supp.2d at 581 (citation omitted); *Calder v. Jones*, 465 U.S. 783 (1984)). "In other words, the fiduciary shield doctrine does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts." *Fairchild*, 946 F.Supp. 2d at 581 (quotation omitted); *Duval Cty. Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 337 (Tex. App. 1984, no writ).

The court has concluded that it has specific personal jurisdiction over Sedillo's tort claims. Accordingly, the fiduciary shield doctrine does not preclude the court from exercising personal jurisdiction over Sachs.

E

Having determined that Sedillo has made a prima facie showing of sufficient minimum contacts for the exercise of specific jurisdiction over defendants, the court must

next consider whether requiring defendants to litigate this suit in Texas comports with "fair play and substantial justice." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citation omitted).  To avoid jurisdiction, defendants "must present a 'compelling case' that jurisdiction is unreasonable and incompatible with 'fair play and substantial justice.'" *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F.Supp.2d 366, 377 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *Burger King*, 471 U.S. at 477-78).  "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Id.* (quoting *Wien Air*, 195 F.3d at 215 (alterations in original)).

As noted above, "[w]hen determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

Defendants argue that litigating this case in Texas rather than New Mexico would pose a substantial burden because they are located in New Mexico and the Agreement is governed by New Mexico law.  Defendants generally describe the relevant factors and reiterate their arguments regarding minimum contacts, but they do not make any specific showing, much less a compelling case, that dismissal is required here.  Accordingly, after evaluating the five factors, the court holds that defendants have failed to present a compelling case that exercising personal jurisdiction over them is unreasonable and incompatible with

- 11 -

fair play and substantial justice.

The court therefore denies defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

F

Sedillo also argues that, to the extent the court lacks personal jurisdiction over defendants with respect to his contract claim, the court can exercise pendent personal jurisdiction because the contract and tort claims arise out of the same nucleus of operative facts. Even if the court assumes *arguendo* that it cannot exercise personal jurisdiction over Sedillo's contract claim alone, it concludes that it would exercise pendent personal jurisdiction over the contract claim because all of Sedillo's claims arise out of the same nucleus of operative facts. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 783 (N.D. Tex. 2008) (Fitzwater, C.J.).

IV

Because the court is denying defendants' motion to dismiss, it will also consider their alternative motion to transfer venue to the District of New Mexico under 28 U.S.C. § 1404(a).

A

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public

against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)).  Nonetheless, the court may not transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other. *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.) (citing *Enserch Int'l Exploration, Inc. v. Attock Oil Co.*, 656 F. Supp. 1162, 1167 n.15 (N.D. Tex. 1987) (Fitzwater, J.)).  "The burden rests on the [moving party] to prove by a preponderance of the evidence that [the] choice of forum should be disturbed and transfer is appropriate based on a balancing of relevant factors."  *Mannatech, Inc. v. K.Y.C., Inc.*, 2006 WL 2216033, at *2 (N.D. Tex. Aug. 3, 2006) (Solis, J.) (citations omitted); *see also Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).

### B

The court first decides "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir.2004) (per curiam).  The court will assume *arguendo* that the District of New Mexico would be a proper venue for this case.

### C

In determining whether it would be more convenient and just to transfer the litigation to New Mexico, the court is to consider "a number of private and public interest factors, none of which are given dispositive weight."  *Id*. (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir.2004)).

- 13 -

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations and quotation marks omitted).

1

The court first considers the private concerns.  Regarding these factors, defendants argue:

> [a]pplying the private and public interest factors also weighs in favor of a transfer.  As Defendants are in New Mexico and the contract is for the loan of funds with limitations applying to New Mexico, it will be relatively easier to access sources of proof in New Mexico.  Also, New Mexico is the location for availability of compulsory process to secure the attendance of witnesses to the Restated Loan Agreement, as it was drafted in New Mexico, which also makes the cost of attendance for willing witnesses more convenient for this matter to be in New Mexico.

Ds. Mot at. 11-12.

Sedillo responds that the same private interest factors weigh equally in favor of maintaining venue in Texas.  He notes that witnesses to Sachs's alleged misrepresentations are in Texas.

Defendants do not explain what sources of proof exist in New Mexico, what witnesses

- 14 -

live in New Mexico, or how a transfer of venue to New Mexico would accomplish anything other than shifting the burden of convenience from Sedillo to defendants. The court finds that the balance of the private interest factors weighs against a transfer.

2

Regarding the public interest factors, defendants argue that New Mexico has an interest in deciding a dispute involving a contract formed in New Mexico and governed by New Mexico law.

Sedillo responds that this court can decide issues of New Mexico law and that Texas courts have a strong interest in adjudicating fraud occurring within Texas to a Texas resident.

The court finds that, on balance, the public interest factors also weigh against a transfer.

Accordingly, because defendants have not met their burden of proving by a preponderance of the evidence that Sedillo's choice of forum should be disturbed, defendants' motion to transfer venue is denied.

V

Having found that the court can exercise specific jurisdiction over Sedillo's claims against defendants, the court now considers defendants' motion to dismiss Sedillo's fraud-based and negligent misrepresentation claims for lack of specificity under Rules 9 and 12(b)(6).

- 15 -

A

Defendants argue that Sedillo has failed to plead the "how, what, where, when and how" of the alleged fraud by not specifying which defendant each claim is made against or when, where, and how each statement was made.  According to defendants, Sedillo alleges only that defendants generally made certain representations, without alleging which defendant made each statement, where the statement was made, the manner each statement was made (in writing or orally), or when each statement was made.

Sedillo responds that he has alleged that Sachs made each statement on behalf of himself individually and on behalf of TEAM.  He argues that the amended complaint identifies numerous statements and that they were false, the harm he suffered as a result, and that some of them occurred in Texas.

Defendants reply that Sedillo has failed to allege why each purported statement was false or misleading, and what specific injury was caused by each statement.  Defendants also posit that it is not clear which statements caused Sedillo's purported injury or which statements relate to the loan to TEAM instead of investments in Sigma, which is not at issue.

B

Rule 9(b) requires that a complaint alleging fraud specify the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the person] obtained thereby." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  In the context of this case, the court will also

- 16 -

determine whether Sedillo's negligent misrepresentation claim satisfies Rule 9(b).[4]

The purpose of Rule 9(b) is not "to procure punctilious pleading detail." *Steiner v. Southmark Corp.*, 734 F.Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.). Rather, Rule 9(b) must be read in light of Rule 8, which requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Corwin v. Marney, Orton Invs.*, 788 F.2d 1063, 1068 n.4 (5th Cir. 1986) (quoting Rule 8(a)). It serves neither "as a throwback to the hypertechnical pleading requirements of the Field Code nor requires needlessly repetitive pleading." *Steiner*, 734 F. Supp. at 273 (citing *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 251 (W.D. Tex. 1979) (Higginbotham, J.)). The specificity that Rule 9(b) requires varies according to the context of the fraud claimed. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific.").

## C

The court holds that Sedillo has failed to plead his fraud-based and negligent misrepresentation claims with the specificity that Rule 9(b) requires. For example, in ¶ 15 of the amended complaint, Sedillo alleges:

> Mr. Sachs claimed that he had exclusive cross-industry sales rights to a patented ozone generator and represented that it would revolutionize waste-water treatment and recycling. Mr.

---

[4]"Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F. 3d 719, 723 (5th Cir. 2003).

> Sachs also claimed that he and his co-founders, worked for
> approximately two years to enhance the working prototype and
> that they advanced it from a Technology Readiness Level
> ("TRL") 2, to a TRL 6, which he said was a key milestone
> because it had been fully tested, operational and demonstrated
> to Occidental Petroleum, who he said wanted to site test it when
> the first oil and gas field unit was produced. Mr. Sachs also
> represented to Mr. Sedillo and other prospective investors that
> there was an abundance of oil and gas customer demand in the
> Texas Permian Basin for his disruptive ozone water treatment
> system.

1st Am. Compl. ¶ 15.  Sedillo does not allege when these statements were made, where they were made, the manner in which they were made (in person or by phone, mail, or email), or how they were false when they were made.  Sedillo's assertions do not provide the specificity necessary to satisfy Rule 9(b).  His negligent misrepresentation claim is similarly deficient. *See id.* at ¶¶ 122-129.  Accordingly, the court dismisses counts 2 through 7 of Sedillo's amended complaint (his fraud-based and negligent misrepresentation claims).

VI

Although the court is granting defendants' motion to dismiss, and although Sedillo has already amended once, the court will grant Sedillo another opportunity to replead. "'[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.'" *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Sedillo has not stated that it cannot, or is unwilling to,

cure the defects that the court has identified.  To the contrary, he explicitly requests leave to replead if the court is inclined to grant defendants' motion to dismiss.  And plaintiffs have cured pleading defects when amending after a motion to dismiss has been granted.  *See, e.g., Reneker v. Offill*, 2010 WL 1541350, at \*2, \*7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (concluding, after twice granting motions to dismiss, that plaintiff's second amended complaint stated claim on which relief could be granted).

The court therefore grants Sedillo 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.  If Sedillo repleads, defendants may move anew to dismiss, if they have grounds to do so.

\*   \*   \*

For the reasons explained above, the court denies defendants' motion to dismiss for lack of personal jurisdiction, denies defendants' alternative motion to transfer venue, and grants defendants' motion to dismiss Sedillo's tort claims for failure to state a claim.  The court grants Sedillo 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

**SO ORDERED**.

November 23, 2020.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 19 -