IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILO SEDILLO in his capacity as        §
trustee of the Filo and Fran Sedillo   §
Revocable Trust, on behalf of the      §
Filo and Fran Sedillo Revocable Trust, §
                                       §
        Plaintiff-Counterdefendant,    §        Civil Action No. 3:20-CV-1628-D
                                       §
VS.                                    §
                                       §
TEAM TECHNOLOGIES, INC., et al.,       §
                                       §
        Defendants-Counterplaintiffs.  §

MEMORANDUM OPINION
AND ORDER

    In this removed action by plaintiff-counterdefendant Filo Sedillo ("Sedillo") against

defendants-counterplaintiffs TEAM Technologies, Inc. ("Team") and Robert Sachs ("Sachs")

(collectively, "defendants"), Sedillo moves for partial summary judgment on his breach of

contract claim and moves under Fed. R. Civ. P. 12(b)(6) to dismiss defendants'

counterclaims.  For the reasons that follow, the court grants Sedillo's motion for partial

summary judgment, grants Sedillo's motion to dismiss defendants' counterclaims, and grants

defendants leave to replead their counterclaims.

I

    Because the background facts and procedural history and the standards that apply to

summary judgment motions and motions to dismiss are best set out in the context of the

rulings on Sedillo's motions, the court will discuss them below.

II

The court turns first to Sedillo's motion for partial summary judgment on his breach of contract claim.

A

This claim relates to a February 1, 2019 Restated Loan Agreement (the "Agreement") under which Sedillo loaned $500,000 to Team in exchange for monthly interest payments due the first of each month starting March 1, 2019.  For any installment payment that Sedillo did not receive by the due date, he was entitled to assess a $750 late fee, "which shall be immediately due and payable upon notice to [Team]."  *Id.*  The Agreement also provided for acceleration of the loan upon default:

> The failure of [Team] to perform any of its obligations under this Restated Agreement shall constitute an event of default.  In the event of a default, [Sedillo] shall have the right upon notice to [Team] to . . . (b) declare the full outstanding balance of the Principal to be immediately due and payable, increase the rate of the Interest accruing thereon to up to Twenty Five and Zero Tenths Percent (25%) per annum, and pursue any and all other rights available to [Sedillo] at law or in equity.

*Id.* at 12.  If the loan was not accelerated, the final installment payment of outstanding principal and all unpaid interest was due on February 1, 2021.  *Id.* at 10.

According to Sedillo, from March 2019 to March 2020, Team made only one timely installment payment.  On March 6, 2020 Sedillo issued to Team a notice of default and acceleration, raised the interest rate to 25%, and assessed the $750 fee for each late installment payment.  Team continued to make monthly installment payments in the original

amount, but it has not paid the outstanding principal, outstanding interest, or late fees. Sedillo maintains that, as of April 12, 2021, Team owes $500,000 in outstanding principal—which was due upon acceleration on March 6, 2020, or, if not, on February 1, 2021 when the loan matured—$17,250 in late fees, $135,416.67 of post-acceleration interest, less $70,000 of post-acceleration payments, for a total of $582,666.67.

Team does not dispute that it failed to make timely installment payments from March 2019 to March 2020.  Instead, it maintains that it has cured any defaults because Sedillo accepted the late monthly payments without comment; he waived strict performance of the Agreement by accepting payments past the first of the month; he did not provide the required notice to collect late fees for 22 of the late payments; he materially breached the Agreement by failing to pay for put options owed to Sachs; and there are issues of material fact regarding defendants' counterclaims that impact Sedillo's breach of contract claim.

B

Because Sedillo is moving for summary judgment on a claim for which he will bear the burden of proof at trial, he "must establish 'beyond peradventure all of the essential elements of the claim[.]'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that Sedillo must demonstrate that there are no genuine and material fact disputes and that he is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*,

- 3 -

603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

The parties agree that the Agreement is governed by New Mexico law. "Under New Mexico law, the elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages." *Strobel v. Rusch*, 2020 WL 7319526, at *4 (D.N.M. Dec. 11, 2020) (citation omitted). The parties agree that the Agreement is a valid and enforceable contract.

## C

Regarding breach, Sedillo posits that, under the terms of the Agreement, the Trust agreed to loan $500,000 to Team, and Team agreed to repay the principal, plus 12% per annum interest in monthly installments due on the first of each month until the maturity date of February 1, 2021; the Trust was entitled to assess a $750 fee for any installment payment not received by the first of the month; by March 2020, Team had only made one timely payment, and Sedillo gave notice that the loan had been accelerated according to its terms; the loan principal, accrued late fees, and unpaid interest were due immediately on March 6, 2020, and Team has yet to pay the outstanding balance of $582,666.67; and, even if the loan was not accelerated, the principal amount was due on February 1, 2021.

Team acknowledges that it has made late installment payments; did not repay the principal amount either by the accelerated due date of March 6, 2020 or by the original due date of February 1, 2021; has not paid any of the $750 fees assessed for late payment; and

has not paid the 12% interest due upon acceleration of the loan.  The court therefore concludes that Team has breached the Agreement, and it turns to whether any defenses preclude Sedillo from recovering, in part or in whole.

D

Team first asserts that it was excused from further performance under the Agreement because Sedillo repudiated his obligation to pay for irrevocable options ("Put Options") for stock in Sigma Medical Technologies, LLC ("Sigma").

The Agreement provides under "<u>Lenders' Additional Obligations</u>":

> As soon as is reasonably practicable after Borrower's execution of this Restated Agreement, Lender shall convey [Sigma] (a) an irrevocable option, which may be exercised no sooner than six months after the Effective Date only in the absence of any default by Borrower, for Robert B. Sachs to sell to Lender an interest of up to One Percent (1.0%) in [Sigma], which shall be free of liens, claims, or encumbrances of any kind, for the price of One Hundred Thousand Dollars and Zero Cents ($100,000.00), and (b) an irrevocable option, which may be exercised no sooner than twelve months after the Effective Date and only in the absence of any default by Borrower, for Robert B. Sachs to sell to Lender an interest of up to One Percent (1.0%) in [Sigma], which shall be free of liens, claims, or encumbrances of any kind, for the price of One Hundred Thousand Dollars and Zero Cents ($100,000.00) (together, the "Put Options").

P. 4-12-21 App. 11 (bold font omitted).

Team maintains that the Put Options, if exercised, required Sedillo to pay Sachs $200,000 for an aggregate 2% interest in Sigma; Sachs exercised the Put Options in writing in November 2019; Sedillo has not tendered the payment for the Put Options; and this is a

- 5 -

material breach of the Agreement that excuses Team's performance of its loan repayment obligation.

Sedillo contends that his breach of contract claim is against Team, not Sachs; that his only obligation under ¶ 6 of the Agreement was to convey the irrevocable options to Sigma, which no party disputes that he did; and that there is no evidence that Sachs exercised the Put Options.

Team has adduced no evidence that Sedillo breached his obligations under ¶ 6 of the Agreement so as to constitute a prior material breach that excused Team from its obligations to repay the loan. Team agrees that Sedillo executed and delivered the Put Options to Sachs; Team's evidence that Sachs exercised the Put Options is an email from Sachs to a third party identified only as "Ray," Ds. 5-3-21 App. 12,[1] not to Sedillo; and there is no evidence that Sedillo breached any obligation owed to Team, the party against whom Sedillo asserts his breach of contract claim. Accordingly, Team has failed to raise a genuine fact issue concerning whether it is excused from performing its obligations under the loan due to either prior material breach or excuse.

E

Team next contends that, because Sedillo accepted installment payments made after the first of the month without complaint, he has waived his right to charge late fees and to consider the loan in default and accelerate the loan.

_____

[1]The email recipient is "rshaum@sigma-medicaltech.com."

- 6 -

1

Sedillo maintains that there is no evidence that the Trust waived its right to accelerate the loan or to charge late fees under the Agreement because he notified Team that it was in default on March 6, 2020, after a year of Team's "lackadaisical approach to its payment obligations," P. 4-12-21 Br. at 17, and the plain language of the Agreement precludes Team's waiver defense.

The Agreement states under the provision that addresses "<u>Indulgences Not Waivers</u>" ("Non-Waiver Provision"):

> Neither the failure nor any delay on the part of Lender to exercise any right, remedy, power, or privilege under this Restated Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege preclude any other or further exercise of any other right, remedy, power, or privilege with respect to any occurrence or be construed as a waiver of such right, remedy, power, or privilege with respect to any subsequent occurrence.

P. 4-12-21 App. 13.

Team does not address the Non-Waiver Provision.  Citing instead cases holding that a lender's pattern of accepting untimely payments can waive his right to complain of default, Team argues that, by accepting months of untimely payments, Sedillo waived his right to charge late payments and to accelerate the loan.

Sedillo responds that the Non-Waiver Provision preserves all of his rights under the Agreement and that, at most, his acceptance of some late monthly payments waived his right to complain of the timeliness of those payments, not his right to consider the loan in default

or charge late fees for subsequent late payments.

2

Waiver is the "intentional relinquishment or abandonment of a known right." *J.R. Hale Contracting Co. v. United N.M. Bank at Albuquerque*, 799 P.2d 581, 585 (N.M. 1990). A party can demonstrate his intent to waive contractual obligations by his conduct or representations, without making an express declaration of waiver. *Id.*

Neither party has cited, nor has the court found, any case holding that a non-waiver provision is unenforceable under New Mexico law. "When a contract was freely entered into by parties negotiating at arm's length, the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves." *WXI/Z Sw. Malls v. Mueller*, 110 P.3d 1080, 1084 (N.M. 2005) (quotation omitted). "Absent ambiguity, provisions of a contract need only be applied, rather than construed or interpreted." *Id.* at 1083-84 (internal quotation marks omitted).

3

To avoid summary judgment based on its affirmative defense of waiver, Team must point to facts that would enable a reasonable trier of fact to find that Sedillo intentionally relinquished his right to insist on monthly payments, to collect late fees, and to accelerate the loan. Team has not done so.

As an initial matter, the court notes that Team does not address the Non-Waiver Provision at all: it fails to contend that the Non-Waiver Provision is unenforceable in the context of this lawsuit, or in general under New Mexico law, or that Sedillo waived the

- 8 -

Non-Waiver Provision.   And although Team argues that Sedillo's acceptance of late payments before March 2020 shows an intentional relinquishment of his right to insist on timely payments, it neither argues nor adduces any proof that such acceptance is evidence of Sedillo's intentional relinquishment of the Non-Waiver Provision itself.

By the Non-Waiver Provision, the parties agreed that (1) Sedillo's failure to exercise any right or remedy under the Agreement did not constitute a waiver of that right or remedy, and (2) Sedillo's partial exercise of any right or remedy did not constitute a waiver of any subsequent right or remedy.   To establish that Sedillo waived this provision, Team must adduce facts showing that he intended to waive not only his rights upon default of the loan, but also to waive *the preservation* of his rights or remedies under the Agreement.   Put differently, even if there were a fact issue regarding whether Sedillo waived his right to complain of late payments before March 2020, Team has not raised any fact issue regarding whether Sedillo intended to waive the Non-Waiver Provision itself.   *See, e.g.*, *12636 Rsch. Ltd. v. Indian Bros., Inc*., 2021 WL 417027, at *9 (Tex. App. Feb. 5, 2021, no pet.) (mem. op.) (explaining that to waive a nonwaiver provision, a party must "manifest clear intent to waive the nonwaiver provision"; otherwise, "the nonwaiver provision is facially dispositive that no waiver may occur on the terms set forth in the nonwaiver provision").   Because Team fails to argue that the Non-Waiver Provision should not be enforced and adduces no evidence of Sedillo's intent to waive the Non-Waiver Provision, Sedillo is entitled to summary

judgment on Team's waiver defense.[2]

F

Team next contends that Sedillo cannot recover for breach of the Agreement because the claim is barred based on waiver by estoppel.

To establish waiver by estoppel, Team must show that Sedillo made a misleading representation by his conduct that led Team to an honest and reasonable belief that Sedillo's rights would not be asserted, and that Team acted to its detriment in reliance on that conduct. *Brown v. Taylor*, 901 P.2d 720, 723-24 (N.M. 1995).

Team maintains that Sedillo's acceptance of untimely installment payments "constituted a misleading representation that he would not be collecting late fees or insisting on strict payment deadlines, and Team had an honest and reasonable belief that this was [his] intention," which "created a waiver by estoppel as to any ongoing late fees or strict payment deadlines." Ds. 5-3-21 Br. at 18-19.

Sedillo responds that Team has not produced any evidence that it had an honest and reasonable belief that Sedillo's rights would not be asserted or that it relied on his accepting late payments or not accelerating the loan in failing to make subsequent timely payments.

---

[2]Team relies on two New Mexico cases in which courts found that acceptance of late rental payments constituted waiver of the right to complain of default or insist on strict compliance with payment deadlines. *See* Ds. 5-3-21 Br. at 15-17 (citing *Easterling v. Peterson*, 753 P.2d 902 (N.M. 1988); *J.R. Hale Contracting Co.*, 799 P.2d 581). But neither case decides the enforceability or applicability of a non-waiver provision under New Mexico law, particularly a provision—like the Non-Waiver Provision—that expressly declines to waive future rights due to any prior forfeit or failure. Accordingly, these cases are inapposite.

- 10 -

Team cites no evidence that would enable a reasonable trier of fact to find that Team had an honest and reasonable belief that Sedillo would not assert his rights to be paid on time, accelerate the loan, or charge late fees; in fact, Team points to no evidence at all in its pursuit of this defense.  Accordingly, the court holds that there is no genuine issue of material fact on this defense and that Sedillo is entitled to summary judgment.

## G

Team asserts the affirmative defense of accord and satisfaction.  "An accord and satisfaction is a method of discharging a contractual obligation by substituting for such contract an agreement for the satisfaction thereof and performing the substituted agreement." *Nat'l Old Line Ins. v. Brown*, 760 P.2d 775, 777 (N.M. 1988).

Sedillo moves for summary judgment on this affirmative defense, contending that there is no evidence that the parties agreed to substitute any other agreement or to discharge their obligations under the Agreement.  Team has not responded in support of this defense. Because Team bears the burden of proof on this affirmative defense and has not designated specific facts showing that there is a genuine issue for trial, the court holds that Sedillo is entitled to summary judgment.

## H

Team also asserts that Sedillo failed to mitigate his damages.  Under New Mexico law, "an injured party has a responsibility to mitigate its damages, or run the risk that any award of damages will be offset by the amount attributable to its own conduct."  *Skeen v. Boyles*, 213 P.3d 531, 540 (Ct. App. N.M. 2009).

Sedillo responds that there is no evidence that he failed to mitigate any damages or that it was even possible for him to mitigate damages, which stem from Team's failure to repay the loan according to its terms.  Team replies that Sedillo has failed to mitigate damages by filing this lawsuit, and it implies that, in so doing, Sedillo has made it more difficult for Team to repay the loan.

Team has adduced no evidence that Sedillo has failed to mitigate any of his damages. The court holds that there is no genuine issue of material fact on this defense and that Sedillo is entitled to summary judgment.

## I

Team also asserts the defense of offset.  Sedillo maintains that Team has not identified what benefit he received for which Team is entitled to an offset of damages owed to Sedillo and that he has already credited all of Team's payments towards the amount it owes on the loan.  Team has not responded in support of this defense.

Because Team bears the burden of proof on its affirmative defense and has not designated specific facts showing that there is a genuine issue for trial, the court grants summary judgment for Sedillo.

## J

Team also alleges that awarding damages to Sedillo would result in unjust enrichment. Under New Mexico law, "[u]njust enrichment exists when one party knowingly benefits at another's expense and allowing that party to retain the benefit would be unjust."  *Romero v. Bank of the Sw.*, 83 P.3d 288, 296 (Ct. App. N.M. 2003).

Sedillo maintains that there is no evidence that he has benefited at Team's expense and that, if anyone has, it is Team who has been unjustly enriched due to its failure to repay the loan to Sedillo.  Team responds that the facts supporting its unjust enrichment defense are the same as those supporting its waiver defense.

Team has not adduced any evidence that Sedillo knowingly benefited at Team's expense; rather, as already explained, Team failed to meet its obligations under the Agreement, and Sedillo has suffered damages as a result.  To the extent that unjust enrichment could be considered a defense to breach of contract, the court grants summary judgment for Sedillo.

K

Team also alleges the defense of unclean hands and "principles of equity."  "The doctrine of unclean hands generally prevents a complainant from recovering where he or she has been guilty of fraudulent, illegal or inequitable conduct in the matter with relation to which he or she seeks relief."  *Randles v. Hanson*, 258 P.3d 1154, 1161 (Ct. App. N.M. 2011) (citation and internal quotation marks omitted).

Sedillo contends that there is no evidence that he has engaged in fraudulent, illegal, or inequitable conduct with respect to the Agreement.  Team responds that Sedillo behaved inequitably by failing to perform his obligations with respect to the Put Options, "entering into bad-faith negotiations" regarding the Put Options, and wrongfully accelerating the loan. Ds. 5-31-21 Br. at 24-25.

The court has already held that there is no evidence that Sedillo failed to perform his

obligations with respect to the Put Options and that Sedillo was entitled to accelerate the loan due to Team's breach.  Team has adduced no evidence that Sedillo engaged in fraudulent, illegal, or inequitable conduct, and the court grants summary judgment for Sedillo.

## L

Accordingly, because there are no genuine issues of material fact with respect to whether Team failed to uphold its obligations under the Agreement, and defendants have not introduced sufficient evidence for a reasonable jury to find in their favor on any asserted affirmative defense, the court grants Sedillo summary judgment on his breach of contract claim.[3]

To the extent that defendants request additional discovery on the issue of damages for Sedillo's breach of contract claim and their counterclaims, the court denies the request as moot because it has not decided the amount of damages today, and, as explained below, is granting defendants leave to replead their counterclaims.

## III

The court now turns to Sedillo's motion to dismiss defendants' counterclaims under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

## A

Team asserts counterclaims against Sedillo for breach of the Agreement, breach of the

---

[3]Sedillo also moves to strike parts of defendants' summary judgment evidence. Because the court concludes that Sedillo is entitled to partial summary judgment even if defendants' summary judgment evidence is considered, the court denies Sedillo's motion to strike as moot.

duty of good faith and fair dealing, and interference with contractual relationships, and both defendants assert a counterclaim against Sedillo for malicious abuse of process.

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Inc.*, 855 F.Supp.2d 615, 618 (N.D. Tex.2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive Sedillo's motion to dismiss under Rule 12(b)(6), defendants must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

B

Team alleges that Sedillo breached the Agreement by "fail[ing] to promote Team or obtain investments, and then later attempting to change the terms of the Agreement, in demanding interest and acceleration of the loan, without bases."  Ds. Countercl. at ¶ 34. Team also seeks attorney's fees for breach of the Agreement.

1

Sedillo maintains that this counterclaim should be dismissed because Team does not allege that Sedillo breached any specific provision of the Agreement; the Agreement does not require that he "promote Team or obtain investments"; he did not attempt to change the terms of the Agreement; and he had the right to demand interest and accelerate the loan under the terms of the Agreement.  Sedillo posits that only the lender (Sedillo) is entitled to recover attorney's fees under the Agreement.

Team responds that Sedillo's duty to promote Team to potential investors "may be reasonably inferred from the allegations in paragraph 18 of the Counterclaim that the parties exchanged [Sedillo's] promise to promote Team for an equity interest in Team."  Ds. 5-7-21 Br. at 5.  Team also maintains that Sedillo breached the Agreement by wrongfully attempting to accelerate the loan after accepting late payments for months.

Sedillo replies that Team has not identified any provision of the Agreement that he breached; the Agreement at most granted Sedillo a security option in the event of Team's default; the court should not infer terms that are not in the Agreement; and Team's claim for improper acceleration of the loan is really a request for declaratory judgment that mirrors

- 16 -

Sedillo's breach of contract claim.

2

Team has not plausibly pleaded that Sedillo breached the Agreement.  Regarding Team's allegation that Sedillo had an obligation to promote Team or obtain investors, Team has not identified any provision of the Agreement that contains such obligation, and it has not demonstrated that it is permissible under New Mexico law for the court to infer obligations that the Agreement does not expressly include.

Regarding the acceleration of the loan, Team does not explain how "attempting to change the terms of the Agreement" is a breach of the Agreement.  And as the court has held above, Sedillo had the right under the Agreement to accelerate the loan and charge interest; Team has not plausibly pleaded that it was "without bases" for him to do so.

C

Team also alleges that Sedillo breached the duty of good faith and fair dealing by

> (a) failing to promote Team or obtain investors for Team, (b) actively disparaging Team to potential investors; (c) actively attempting to change the terms of the Agreement in wrongfully demanding interest and acceleration of the loan, and (d) actively meeting with potential investors and then disparaging Team and also negotiating on behalf of the Trust's own business ventures.

Ds. Countercl. at ¶ 42.

1

To plausibly plead a claim for breach of the implied duty of good faith and fair dealing, Team must adequately allege that Sedillo engaged in bad faith or wrongfully and

- 17 -

intentionally used the contract to Team's detriment. *See Sanders v. FedEx Ground Package Sys., Inc*., 188 P.3d 1200, 1203 (N.M. 2008).

> The implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits [of their agreement] will breach the duty of good faith implicit in the contract.

*Id.* The duty is implied in order to "make[] effective the agreement's promises." *Id.*

Sedillo posits that the implied duty of good faith and fair dealing is only breached when a party seeks to prevent the contract's performance or withholds its benefits from the other party; Team asserts only a conclusory recitation of the elements of this claim without pleading any facts showing Sedillo's interference or what benefit Team lost; Team does not allege that he sought to prevent Team from performing or withheld any contract benefit from Team; there is no term in the Agreement that requires him to promote Team or secure investors for Team; Team has not plausibly pleaded that it suffered any damages due to the acceleration of the Agreement; and the duty of good faith and fair dealing does not change or add to the terms of the Agreement.

Team responds that Sedillo breached his duty of good faith and fair dealing "based on the same operative facts as [Team's] breach of contract claim[,]" Ds. 5-7-21 Br. at 6; that Sedillo was successful in discouraging investment in Team, which made it more difficult for Team to make payments on the loan; and that the acceleration of the loan and filing of this lawsuit hampered Team's ability to perform the Agreement.

Sedillo replies that the Agreement does not require him to promote or secure investors

for Team; he was entitled to accelerate the loan; and Team has not alleged that it suffered any damages.

2

Like its counterclaim for breach of the Agreement, Team has failed to plausibly plead a counterclaim for breach of the implied duty of good faith and fair dealing. Team has not sufficiently alleged that Sedillo sought to prevent Team from performing or that he had a duty to promote Team or secure investors. Put differently, Team does not allege that Sedillo did anything to injure Team's rights under the Agreement. Moreover, as discussed above, Sedillo was entitled to accelerate the loan due to Team's default.

D

Team also alleges a claim for interference with contractual relations. It asserts that Sedillo "played an active and substantial part in causing Team to lose the benefits of contracts with potential investors" by disparaging Team and negotiating on behalf of the Trust's business ventures with potential investors. Ds. Countercl. at ¶¶ 47-48.

1

To plausibly plead this counterclaim, Team must sufficiently allege that Sedillo "intentionally and improperly interfere[d] with [Team's] prospective contractual relation to [another] for the pecuniary harm resulting from loss of the benefits of the relation." *President & Fellows of Harvard Coll. v. Elmore,* 222 F.Supp.3d 1050, 1063 (D.N.M. 2016).

Sedillo maintains that Team has not pleaded any time or place of any alleged interference and that it only alleges that Sedillo met with unidentified investors somewhere

- 19 -

at some point in time, and that Team has failed to plead sufficient facts showing that Sedillo acted solely to harm Team.

Team responds that Sedillo interfered with its relationships with potential investors by making disparaging statements about Team, and that, although Team did not allege that Sedillo's disparaging statements were false or misleading, it is reasonable to infer that they were.

Sedillo replies that the court should not fill in the gaps of Team's deficient pleading, and that Team alleges no facts demonstrating interference and only states the elements of the counterclaim.

2

Team has failed to allege facts that, accepted as true and viewed favorably to Team, show that Sedillo took any specific actions to interfere with Team's prospective relationships or that he did so solely to harm Team.  The court therefore dismisses this counterclaim.

E

Team's final counterclaim is for malicious abuse of process.  It alleges that Sedillo "has actively participated in misusing the legal process in the present judicial proceeding by prosecuting the present action, for a purpose not lawfully warranted by such legal process, without probable cause and/or other irregularities suggesting extortion, delay, and/or harassment."  Ds. Countercl. at ¶ 54.

- 20 -

1

To plead a plausible abuse of process claim under Texas law,[4] Team must sufficiently allege that Sedillo instituted civil proceedings with malice and without probable cause, that the proceedings terminated in Team's favor, and special damages. *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).

Sedillo contends that this counterclaim is a formulaic recitation of the elements of a cause of action and does not identify how he misused the legal process, what irregularities suggest extortion, what purpose is not lawfully warranted, what his ulterior motives are, or to what illegitimate end he acted.

Team responds that Sedillo filed this lawsuit maliciously, knowing that he had no basis to accelerate the loan or claim default interest and that "the remaining elements of the [abuse of process] claim have not yet matured because they necessarily require the resolution of [Sedillo's] claims before they can proceed[.]" Ds. 5-7-21 Br. at 7-8.

Sedillo replies that Team admits that this counterclaim is not ripe, and that Team has still not alleged any special damages stemming from the alleged malicious prosecution.

2

Team has failed to plead a plausible claim for abuse of process because it concedes that this counterclaim is not ripe, and it has failed to allege any special damages due to such

_____

[4] Sedillo maintains that Texas law applies because it is the law of the place where the allegedly malicious legal process was filed. Because Team relies solely on Texas law in its response regarding this counterclaim, the court will apply Texas law.

- 21 -

abuse of process.

F

Although the court is granting Sedillo's motion to dismiss, it will permit defendants leave to replead.

"[D]istrict courts often afford [counterplaintiffs] at least one opportunity to cure pleading deficiencies before dismissing [their counterclaims], unless it is clear that the defects are incurable or the [counterplaintiffs] advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Because defendants have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 28 days from the date this memorandum opinion and order is filed to replead their counterclaims.

Although the court is permitting defendants to replead their counterclaims, its ruling today granting Sedillo's motion for partial summary judgment shall stand as entered, regardless whether defendants are able on repleading to state a plausible counterclaim on which relief can be granted.

\*   \*   \*

For the foregoing reasons, the court grants Sedillo's motion for partial summary judgment, grants Sedillo's motion to dismiss defendants' counterclaims, and allows

defendants to replead.[5]

**SO ORDERED**.

July 27, 2021.

_(signature)_
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[5]The court denies Sedillo's May 17, 2021 motion to strike as moot.